UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. 1:91-cr-00049-SEB-MJD | |
| | ) | | |
| MICHAEL LLOYD CUMMINGS, | ) | -01 | |
| | ) | | |
| Defendant. | ) | | |

**Entry Granting Motion for Compassionate Release**

On June 7, 2021, Defendant Michael Lloyd Cummings—who is represented by retained counsel—filed a motion for compassionate release under § 603 of the First Step Act, which is codified at 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 19. Mr. Cummings asks the Court to reduce his sentence to time served and to immediately release him. Dkt. 20. The United States responded on July 30, 2021. Dkt. 26. At the Court's direction, the United States filed a supplemental response on September 2, 2021, dkt. 30, and Mr. Cummings filed a reply, dkt. 31. Thus, the motion for compassionate release is ripe for the Court's consideration. For the reasons explained in this Entry, the motion is **granted**.

## I. Background

A.   *Conviction and Sentencing*

In 1991, the Court sentenced Mr. Cummings to an aggregate sentence of life imprisonment after a jury found him guilty of two counts of conspiracy to manufacture and possess with intent to distribute more than 1,000 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; and one count of being a convicted felon in possession of a firearm, in violation of 18

U.S.C. §§ 922(g)(1) and 924(a)(2). Dkt. 16. The Court also imposed 10 years of supervised release. *Id.*

The Presentence Investigation Report sets out the following offense conduct:

In June 1990, Mr. Cummings pled guilty to felony possession of methamphetamine in California. Dkt. 29 at 2. He was placed on probation. *Id.* In November 1990, Mr. Cummings moved to Bloomington, Indiana. *Id.* at 3. He remained on probation after he moved. *Id.* at 3, 7. When he moved to Bloomington, he brought laboratory equipment that he later used to manufacture methamphetamine. *Id.* at 3. He also brought along methamphetamine, some of which was distributed to Mr. Cummings's two half-brothers and his 19-year-old son. *Id.*

When Mr. Cummings arrived in Bloomington, he rented a house, set up a methamphetamine lab, and began manufacturing methamphetamine. *Id.* Mr. Cummings distributed methamphetamine to his adopted 22-year-old daughter for her personal use and to his 19-year-old son for his personal use and for resale. *Id.* Mr. Cummings also began distributing methamphetamine to several other people. *Id.* Between November 1990 and March 1991, Mr. Cummings enlisted the help of several other individuals to obtain the chemicals and products necessary to manufacture methamphetamine. *Id.* at 3–4. In February and March 1991, Mr. Cummings spent the majority of his time in the lab in his residence. *Id.* at 4. While he was working in the lab, he carried a .347 Magnum and a smaller firearm in his hip pocket. *Id.* He frequently carried weapons elsewhere, both inside and outside of the house. *Id.*

In March 1991, an acquaintance of Mr. Cummings's son came to Mr. Cummings's house and threatened to call the police. *Id.* Mr. Cummings then began to dismantle his methamphetamine laboratory. *Id.* On March 25, 1991, law enforcement officers searched Mr. Cummings's house where they found, among other things, methamphetamine and 12 firearms, many of which were

loaded. *Id.* During the course of the conspiracy, Mr. Cummings distributed at least three pounds of methamphetamine to other individuals. *Id.* at 5. At trial, a chemist testified that Mr. Cummings also had sufficient supplies to manufacture at least 7 kilograms of methamphetamine. *Id.*

After Mr. Cummings was arrested and detained in the Marion County Jail, he attempted to arrange the murder-for-hire of two potential witnesses against him. *Id.* at 6. As payment, he offered a five-page hand-written formula for the manufacture of methamphetamine. *Id.* He also made direct threats to government witnesses in the Marion County Jail, thereby requiring immediate relocation of the witnesses. *Id.*

At the time, § 841 required a mandatory minimum sentence of 20 years of imprisonment for the drug counts; the maximum sentence for those counts was life in prison. *Id.* at 10. Based on a total combined offense level of 42 and a criminal-history category of III, Mr. Cummings's guideline range for imprisonment was 360 months to life. *Id.* As explained, the Court sentenced Mr. Cummings to life in prison. Dkt. 16.

B.   *Current Incarceration and Medical Conditions*

Mr. Cummings is now 72 years old. He is currently incarcerated at FCI Terre Haute. He has been in custody since his arrest in March 1991—that is, he has been in custody for more than 30 years.

As of February 22, 2021, the BOP has given Mr. Cummings a low security classification and considers him to present a minimum risk of recidivism. Dkt. 20-6 at 3. He has used his 30 years in the BOP well. His counsel represents (and the United States does not dispute) that he has maintained a perfect discipline record. *See* dkt. 20 at 23. Until a recent injury, he successfully maintained employment. *Id.*

Upon his release, Mr. Cummings plans to live with his sister in Indiana. Dkt. 20 at 24; *see also* dkt. 20-7 at 3–4 (letter from Mr. Cummings's sister stating that she would like Mr. Cummings to live with her). Mr. Cummings's other sister has submitted a letter of support. *Id.* at 2. Mr. Cummings is a veteran, *see* dkt. 29 at 12, so—if he is released—he will be able to support himself with Social Security and Medicare benefits, *see* dkt. 20 at 24. As a veteran, he may also have access to other benefits.

Mr. Cummings's medical records show that he suffers from several medical conditions, including hyperlipidemia, hypertension, epilepsy/seizure disorder, and polyarthritis. *See* dkt. 30-1 at 29–30. In addition, in 2020, Mr. Cummings suffered a brain injury after he fell from a height while working. *See, e.g.*, *id.* at 7, 54. Since that time, he has not been able to hear, *id.* at 1, and BOP medical staff has provided him with a whiteboard and marker so that he can communicate with others, *id.* at 49. As of June 3, 2021, Mr. Cummings uses a cane to walk, but he is unsteady without the cane. *Id.* at 1, 7, 10. Since December 29, 2020, Mr. Cummings has not been assigned to work duty because of his medical conditions. Dkt. 20-6 at 4.

While Mr. Cummings was receiving inpatient rehabilitation for his fall, he tested positive for COVID-19. *See, e.g.*, dkt. 30-1 at 51; dkt. 26-2. He suffered symptoms, dkt. 26-2, but BOP records indicate that his COVID-19 infection had resolved by December 2020, dkt. 20-6 at 3. Mr. Cummings received his first dose of the Pfizer COVID-19 vaccine on December 20, 2020, and the second dose of the vaccine on January 20, 2021. Dkt. 30-1 at 67–68.

## II. Legal Standard

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C.

§ 3582(c)(1)(A)(i). Before the First Step Act was enacted on December 21, 2018, only the Director of the BOP could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before

passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c).  U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations:  First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement."  U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable."  U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . . "). It has not been updated since the First Step Act

amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by prisoners. *United States v. Gunn*, 980 F. 3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

### III. Discussion

Mr. Cummings contends that "extraordinary and compelling reasons" support a sentence reduction in his case within the meaning of § 3582(c)(1)(A)(i) because: (1) he suffers from medical conditions that increase his risk of experiencing severe symptoms if he contracts COVID-19 again; (2) his age and medical conditions substantially reduce his ability to provide self-care while incarcerated at FCI Terre Haute; and (3) he is 72 years old and has served more than 30 years of his sentence. Dkt. 20 at  20–24. He further argues that a reduction of his sentence would not create

a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 23–28.

In response, the United States does not dispute that Mr. Cummings has exhausted his administrative remedies as required by § 3582(c)(1)(A). *See generally* dkt. 26. It argues, however, that Mr. Cummings has not shown extraordinary and compelling reasons warranting release because has been vaccinated against COVID-19 and is being treated for his other conditions. Dkts. 26, 30. It also argues the sentencing factors in § 3553(a) do not favor release. *Id.*

A.    *Extraordinary and Compelling Reasons*

The Court concludes that Mr. Cummings has shown extraordinary and compelling reasons warranting release in this case.[1] At the outset, the Court notes that the possibility that Mr. Cummings might be reinfected with COVID-19 does not constitute an extraordinary and compelling reason warranting release because he has now been fully vaccinated against the virus. *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-03, dkt. 274 (S.D. Ind. Feb. 16, 2021); *see also United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). That conclusion does not, however, end the analysis because Mr. Cummings relies on more than just his risk of being reinfected with COVID-19. He also contends that extraordinary and compelling reasons support

---

[1] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court would typically consider the rationale provided by Mr. Cummings's warden in denying Mr. Cummings's administrative request for relief. In this case, however, it appears that the warden did not respond to Mr. Cummings's administrative request. *See* dkt. 20 at 20.

his release because his medical conditions limit his ability to provide self-care in the prison environment and because he is over 70 years old and has served more than 30 years of his sentence. The Court agrees.[2]

Mr. Cummings is 72 years old, and he has served more than 30 years of his life sentence with a perfect disciplinary record. Since late 2020, he has also faced a unique combination of physical challenges, including being deaf and having mobility issues. Taken together, the Court concludes that these circumstances constitute extraordinary and compelling reasons warranting relief under § 3582(c)(1)(A)(i).

B.      *Danger to any Other Person or the Community*

The Sentencing Guidelines provide that compassionate release is appropriate only where the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13(2).  Section 3142(g) sets out the factors the Court

---

[2] Mr. Cummings argues that his circumstances qualify as "extraordinary and compelling" under various portions of the Application Note to the policy statement in U.S.S.G. § 1B1.13. Specifically, he argues that: (1) Application Note 1(A)(ii)(I) applies because he suffers from a serious medical condition that substantially diminishes his ability to provide self-care in the prison environment; and (2) Application Note 1(B) applies because he is at least 65 years old, is experiencing a serious deterioration in his physical health because of the aging process, and he has served at least 10 years of his term of imprisonment. Dkt. 20 at 20. The Court need not decide whether Mr. Cummings meets the strict requirements of any of these provisions because the Court is not bound by the policy statement and possesses broad discretion to determine what qualifies as "extraordinary and compelling" under § 3582(c)(1)(A)(i). *See Gunn*, 980 F.3d at 1180–81.

Mr. Cummings also relies on BOP Program Statement 5050.50 (January 17, 2019) which states that the "criteria for a [reduction in sentence] request may include" so-called "new law" elderly inmates, who are inmates sentenced for an offense that occurred on or after November 1, 1987; are 70 years or older; and have served 30 years or more of their term of imprisonment. *See* dkt. 20 at 25 (citing *https://www.bop.gov/policy/progstat/5050_050_EN.pdf*). This Program Statement also is not binding on the Court. *Cf. Gunn*, 980 F.3d at 1180–81 (courts have wide discretion to determine what qualifies as "extraordinary and compelling" for purposes of § 3582(c)(1)(A)(i)). The Court notes, however, that Mr. Cummings appears to qualify for reduction-in-sentence consideration under this portion of the Program Statement, and the United States does not argue to the contrary. Instead, it focuses on the § 3553(a) factors. *See* dkt. 30 at 5 ("While Cummings is 71 years of age and has served approximately 30 years in prison of a life sentence, the § 3553(a) factors weigh against Cummings's release. As argued in its initial response, the government believes that Cummings has not met the extraordinary and compelling reason to support release when the § 3553(a) factors are considered.").

must consider in determining whether a defendant should be detained pending trial.  These same

factors guide the Court's release determination at this juncture as well:

> **(g) Factors to be considered.**—The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Mr. Cummings's crimes were serious. While on probation, he manufactured and distributed

large amounts of methamphetamine, including to members of his own family. He possessed a

veritable arsenal of weapons, despite being a convicted felon. And, once arrested, he threatened

some government witnesses and tried to arrange the murder-for-hire of other witnesses.

The Court finds, however, that Mr. Cummings's release from incarceration to his 10-year

term of supervised release would not threaten the safety of any person or the general public. At

this point, Mr. Cummings is 72 years old and suffers from serious disabilities, including being

totally deaf. His crimes are also more than 30 years old. He has been incarcerated for more than

three decades and has maintained a perfect discipline record. Before his most recent injury, Mr.

Cummings successfully maintained employment. Tellingly, even the BOP rates him as presenting a minimum risk of recidivism. Upon release, Mr. Cummings plans to live with his sister, who will provide him with housing.  His other sister has submitted a letter of support. Mr. Cummings will also be eligible for Social Security and Medicare benefits upon release. This income should provide him with a level of financial stability that many recently released offenders lack. The support of his family and the potential for financial stability should help Mr. Cummings transition back to being a law-abiding member of the community.

Accordingly, pursuant to § 3142(g), the Court finds that Mr. Cummings does not presently pose a danger to any person or the community if his sentence is reduced to time served.

C.      *Section 3553(a) Factors*

Section 3553(a) provides:

> **(a) Factors to be considered in imposing a sentence.**—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>> **(2)** the need for the sentence imposed—
>>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> **(B)** to afford adequate deterrence to criminal conduct;
>>> **(C)** to protect the public from further crimes of the defendant; and
>>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> **(3)** the kinds of sentences available;
>> **(4)** the kinds of sentence[s] and the sentencing range established for--
>>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [issued by the Sentencing Commission . . . ;]
>> **(5)** any pertinent policy statement guidelines [issued by the Sentencing Commission . . . ;]
>> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

As recognized above, Mr. Cummings's conduct in this case was serious. But Mr. Cummings has been incarcerated for more than 30 years, representing a serious sanction that appropriately recognizes the seriousness of his conduct. He has maintained clean conduct in the BOP and taken steps to rehabilitate himself, suggesting that further incarceration is not needed to protect the public from future crimes he might commit. He is 72 years old and also suffers from a number of serious medical conditions that have reduced his ability to function in the correctional setting. In these circumstances, further incarceration would be greater than necessary to serve the purposes of punishment set forth in § 3553(a)(2).

Taking all the facts together, the Court finds that the § 3553(a) factors weigh in favor of reducing Mr. Cummings's sentence to time served. *See United States v. Ebbers*, No. S402-CR-11443 VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) (in evaluating motion for compassionate release, the court should consider whether the § 3553(a) factors outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence). Under the facts presented by this case, keeping Mr. Cummings incarcerated any longer would be more than what is necessary to provide just punishment for Mr. Cummings's offenses.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Cummings's sentence to time served, that Mr. Cummings does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's applicable policy statements. Therefore, the Court **GRANTS** Mr.

Cummings's motion for compassionate release, dkt. [19], and **ORDERS** that Mr. Cummings's sentence of imprisonment be reduced to **time served.** The term of supervised release remains 10 years. The terms of supervised release stated in the Judgement imposed on October 15, 1991, dkt. 16,  remain the same with the addition of the following conditions: Mr. Cummings is ordered to comply with any period of quarantine due to the COVID-19 pandemic as directed by medical staff and/or any state or local health authority.

This Order is stayed for up to **21 days**, for the verification of Mr. Cummings's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure Mr. Cummings's safe release. The BOP shall release Mr. Cummings as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for Mr. Cummings to travel. There shall be no delay in ensuring travel arrangements are made. If more than 21 days are needed to make appropriate travel arrangements and ensure Mr. Cummings's safe release, the parties shall immediately notify the Court and show cause why the stay should be extended.

No later than **12:00 p.m. on September 22, 2021**, counsel for the United States is **ordered** to do the following: (1) transmit the contemporaneously filed AO248 Order to Mr. Cummings's custodian; and (2) file a notice with the Court confirming that transmission of the AO248 Order has occurred.

**IT IS SO ORDERED.**

Date: _____9/20/2021_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel